## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

CAROLYN BYRNE,                        :

     Plaintiff,                     :
                              Case No. 3:11cv00353

 vs.                                  :

                                District Judge Thomas M. Rose

MICHAEL J. ASTRUE,                   :    Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,             :

     Defendant.                     :

---

# REPORT AND RECOMMENDATIONS[1]

---

## I.    INTRODUCTION

Plaintiff Carolyn Byrne brings this case challenging the Social Security Administration's denial of her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).  This Court has jurisdiction to review the administrative denial of her applications.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc. #13), the administrative record (Doc. #7), and the record as a whole.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff asserted in administrative proceedings that she is eligible to receive DIB and SSI because she is under a "disability" within the meaning of the Social Security Act. In the present case, Plaintiff seeks a reversal of the Administrative Law Judge's decision, and a remand of this case to the Social Security Administration to correct certain errors. In the alternative, Plaintiff seeks an Order reversing the ALJ's decision and granting her benefits because evidence in the record supporting Plaintiff's disability is strong, while contrary evidence is weak. The Commissioner contends that an Order affirming the ALJ's decision is warranted.

## II.     BACKGROUND

### A.     Procedural History

Plaintiff filed her SSI and DIB applications in May 2008, asserting that she has been under a "disability" since December 18, 2007. (*PageID##* 207-14, 215-18). Plaintiff  claimed to be disabled by neck and back problems, having one kidney, bone loss, and depression. (*See PageID#* 242).

Following initial administrative denials of her applications, Plaintiff received a hearing before ALJ Carol K. Bowen. ALJ Bowen later issued a written decision concluding that Plaintiff was not under a disability, and, therefore, not eligible to receive DIB or SSI. (*PageID##* 69-79).

### B.     Plaintiff's Vocational Profile and Testimony

Plaintiff was 52 years old on the date the ALJ issued her decision, which defined her as "closely approaching advanced age."  *See* 20 C.F.R. §§ 404.1563; 416.963[2]; *see also PageID##* 78, 250.  Plaintiff has a tenth grade "limited education."  *See* 20 C.F.R. § 404.1564(b)(3); *see also PageID#* 248.  She has past relevant work experience as a team leader of a laundry cleaning service.  (*PageID##* 243, 283).

Plaintiff testified at the administrative hearing[3] that her driving is limited, but she is able to drive to doctors' appointments and therapy.  (*PageID##* 103-04).  She tried working one day in 2008, testifying that she could not perform the job her employer put her on because they wanted her to use her left arm to hold a button down on an industrial washing machine. (*PageID##* 104-05).

Plaintiff showed the ALJ a knot on her left shoulder in response to why she could no longer work.  (*PageID#* 106).  She testified that she cannot turn her neck.  (*Id.*).  She testified that she has had this problem "all my life."  (*Id.*).  She noted her neck has gotten progressively worse over the years.  (*PageID#* 107).  Plaintiff testified to a number of medications for her pain which make her sleepy, "like a zombie laying."  (*PageID#* 108).  She noted having problems affording some of her medication.  (*Id.*).  Plaintiff noted that the medications do not particularly help with her pain, nor did a course of physical

---

[2] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI/DIB Regulations.

[3] Because the alleged errors raised by Plaintiff do not implicate the vocational expert testimony also presented at the administrative hearing, the Court has not summarized that testimony.

therapy or the use of heat and ice packs.  (*PageID*## 109-10).  Plaintiff testified that she

began therapy every two weeks and takes psychotropic medications. (*PageID*# 110-11).

Plaintiff testified to experiencing "a lot" of pain in her lower back.  (*PageID*#

108).  Her pain is worse when she sits too long or stands too long.  (*Id.*).  Her shoulder

blades are "real tender to the touch," the left worse than right.  (*PageID*## 108-09).  She

further testified that left shoulder surgery has been recommended but it is not something

she is able to afford.  (*PageID*# 109).

As to her activities of daily living, Plaintiff testified that she sits around most of

the day and relies on her boyfriend and his parents for completing chores.  (*PageID*#

112).  Her boyfriend will take her grocery shopping on the weekend, but sometimes she

needs to sit down because her back hurts.  (*PageID*# 113).  She will briefly use a

computer to check her email or use Facebook.  (*PageID*# 114).  She described her two

dogs as her hobby.  (*Id.*).  Plaintiff does not see friends often and does not take trips or

participate in clubs.  (*PageID*# 115).

Plaintiff cannot lift anything with her left arm, and when she reaches with her left

arm, she noted "it starts popping, cracking, and it hurts."  (*PageID*# 117).  She cannot use

her left arm to wash her hair.  (*PageID*# 113).  Plaintiff estimated that she can lift 5 to 10

pounds with her right arm, walk half a block, and stand 5 to 10 minutes before she needs

to sit down.  After sitting for 10 minutes she needs to shift positions.  (*PageID*## 117-19).

When questioned by her attorney, Plaintiff testified that the knot on her left

shoulder "hurt[s] really really bad . . . like it's on fire."  (*PageID*# 120).  She does not use

her left arm for tasks such as buttoning buttons, opening jar lids, or brushing her hair.
(*PageID*# 123).

### C. <u>Relevant Medical Opinions</u>

<u>Physical Impairments</u>

Plaintiff relies on the opinions of her family physician, Marilyn Jones, M.D.
Plaintiff established primary care with Dr. Jones in August 2003.  (*PageID*# 309).  The
record shows that Dr. Jones continued to treat Plaintiff through at least March 2011.
(*PageID*## 309-410, 518-673, 757-84, 807-11).

Dr. Jones wrote on a prescription pad in June 2009 that Plaintiff was "unable to
work due to previous back surgery."  (*PageID*# 699).

In June 2010, Dr. Jones completed interrogatories wherein she opined that due to
Plaintiff's physical impairments, she could lift and carry 10 pounds occasionally and 5-10
pounds frequently.  (*PageID*# 801).  She can stand, walk or sit up to 1 to 2 hours during
an eight-hour workday.  (*PageID*## 801-02).  Plaintiff cannot climb, crouch, or crawl, but
can occasionally balance, stoop, or kneel.  (*PageID*# 802).  Dr. Jones based these
limitations on Plaintiff's congenital spinal abnormality and surgery.  Due to congenital
fusion, arthritis, and previous surgery, Dr. Jones also reported that Plaintiff would require
limitations on reaching, pushing, pulling, and handling.  (*PageID*# 803).  Dr. Jones also
opined that Plaintiff cannot withstand the pressure of meeting normal standards for work
productivity and accuracy without significant risk of decompensation or a worsening of
her symptoms.  (*PageID*# 805).  Dr. Jones further opined that Plaintiff cannot meet the

5

physical demands of either light or sedentary work. (*PageID#* 806). Dr. Jones concluded that sedentary work requiring manual labor of any kind is not recommended due to the risk of further injury to her congenital spinal abnormality. Dr. Jones felt that although Plaintiff has been willing to work, she physically can no longer perform her job duties due to pain. (*Id.*).

In March 2011, Dr. Jones opined that Plaintiff "is unable to work due to chronic pain involving her neck, shoulders and back." (*PageID#* 812).

In determining Plaintiff's physical residual functional capacity (RFC),[4] the ALJ relied on the opinions of the state agency physicians.

After reviewing the file on August 15, 2008, W. Jerry McCloud, M.D., a state agency physician, conducted a physical RFC assessment based on Plaintiff's record. (*PageID##* 509-16). Dr. McCloud found that Plaintiff retained the ability to occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and the ability to push or pull with the left arm was limited. (*PageID##* 510-11). He found Plaintiff could never climb ladders, ropes, or scaffolds. (*PageID#* 511). Dr. McCloud found Plaintiff's statements were only partially credible, noting that even though Plaintiff reported that she could not lift anything, this was not consistent with the objective medical evidence. (*PageID#* 514).

---

[4]The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *see Howard v. Commissioner of Social Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

Another state agency physician, Nick Albert, M.D. affirmed Dr. McCloud's assessment in December 2008. (*PageID#* 692).

### Mental Impairments

Plaintiff relies on the opinion of Alan R. Boerger, Ph.D., who examined Plaintiff on behalf of the Ohio Bureau of Disability Determination (BDD) on June 16, 2008. (*PageID##* 483-89). Dr. Boerger noted that Plaintiff drove herself to the appointment and arrived early. (*PageID#* 483). Plaintiff described crying spells, sleep disturbance, hopelessness, suicidal thoughts, low energy, mood swings, anxiety, difficulty trusting others, and anger management problems. (*PageID##* 485-86). Plaintiff reported that she dropped out of tenth grade because she got married. She also noted she was in special education classes. (*PageID#* 484). Plaintiff had worked at Cintas Uniforms for 15 years and last worked in December 2007. She had previous work experience as an assistant manager of an apartment complex. (*PageID##* 484-85). Plaintiff told Dr. Boerger that her uncle had died the previous week. (*PageID#* 486). Plaintiff reported doing household chores such as laundry, vacuuming, and making the bed; taking care of four dogs; and being able to go to stores and manage her own money. (*PageID#* 487).

During the examination, Dr. Boerger found that Plaintiff's speech and thought processes were appropriate, relevant, and coherent. (*PageID#* 485). Dr. Boerger also found her to be tearful and noted that she performed extremely slowly on Serial 7's and got lost to the point of being unable to continue. (*PageID#* 486).

7

I.Q. testing revealed a verbal I.Q. of 67, a performance I.Q. of 72, and a full scale I.Q. of 66.  (*PageID#* 487).  Dr. Boerger reported that the I.Q. test results may be a low estimate of Plaintiff's "true intellectual potential.  She appears to have functioned in her life as an individual with at least borderline range level intellectual abilities based on her occupational and social history," however he also indicates that the scores did "not appear to be the result of any malingering."  (*PageID#* 487-88).  He further noted that the "combination of limited educational background, depression, anxiety and physical health problems may have contributed to the current low score."  (*Id.*).

Dr. Boerger diagnosed Plaintiff with a dysthymic disorder, generalized anxiety disorder, and borderline intellectual functioning.  (*PageID#* 488).  Dr. Boerger did not diagnose mental retardation.  He assigned Plaintiff a Global Assessment of Functioning (GAF) score of 51 for symptoms and 58 for functioning[5].  Dr. Boerger opined that Plaintiff had a mild impairment in her ability to relate to others.  (*Id.*).  Dr. Boerger also found that she was moderately impaired in her ability to understand and follow instructions, her ability to maintain attention to perform simple repetitive tasks, and in her

---

[5]Health care clinicians perform a Global Assessment of Functioning to determine a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Hash v. Commissioner of Social Sec.*, 309 F. App'x 981, 988 n.1 (6th Cir. 2009); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at pp. 32-34. ("DSM-IV-TR"). Individuals with scores of 51-60 are classified as having "moderate symptoms ... or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV-TR at 34.

ability to withstand the stress and pressures associated with day-to-day work activity. (*Id.*).

In July 2008, after review of Plaintiff's medical record, Constance Fullilove, Ph.D., a state agency psychologist, prepared a Mental Residual Functional Capacity Assessment on behalf of the Ohio BDD. (*PageID#* 491-508). Dr. Fullilove opined that Plaintiff had moderate limitations in her ability to understand and remember detailed instructions; to carry out detailed instructions; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to respond appropriately to changes in the work setting. (*PageID##* 491-92). Dr. Fullilove concluded that Plaintiff could work and was "best suited for simple tasks in a stable non production type environment with little change in job duty." (*PageID#* 493).

Dr. Fullilove also prepared a "Psychiatric Review Technique" and opined that Plaintiff had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. (*PageID#* 505). The record reveals no episodes of decompensation. (*Id.*). In November 2008, Caroline Lewin, Ph.D., reviewed Plaintiff's medical record and affirmed Dr. Fullilove's assessment. (*PageID#* 691).

## III.    ADMINISTRATIVE REVIEW

### A.    **"Disability" Defined**

To be eligible for SSI or DIB a claimant must be under a "disability" within the

definition of the Social Security Act.  *See* 42 U.S.C. §§ 423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  A "disability" consists only of physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

### B.    Social Security Regulations

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence; *see PageID##* 70-71; *see also* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?

2.    Does the claimant suffer from one or more severe impairments?

3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

 **C.** **ALJ Bowen's Decision**

At Step 1 of the sequential evaluation, ALJ Bowen found that Plaintiff has not engaged in substantial gainful activity "at any time relevant to this decision." (*PageID#* 71).

The ALJ found at Step 2 that Plaintiff has the severe impairments of cervical spondylosis with discectomy and fusion; Klippel-Feil syndrome with congenital cervical fusion; left shoulder degenerative joint disease; dysthymic disorder; anxiety; and possible borderline intellectual functioning. (*Id.*). The ALJ also found that Plaintiff's hyperlipidemia, hypertension, osteoporosis, congenital kidney abnormality and low back pain are not considered severe impairments. (*PageID#* 73).

At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria in the Commissioner's Listing of Impairments. (*PageID#* 53).

At Step 4, the ALJ concluded that Plaintiff retained the RFC to perform a reduced range of light work, providing the following restrictions:

> lift up to 10 pounds, but there is no limitation in sitting, standing, or
> walking.  Additional restrictions are: no pushing or pulling with the non-
> dominant, left arm; use of the left arm as an "assist" only; she must avoid
> climbing ladders, ropes, or scaffolds; crawling; overhead reaching;
> exposure to hazardous machinery or unprotected heights.

(*PageID#* 75).  The ALJ further limited Plaintiff to simple, routine, repetitive tasks with

no more than occasional changes in the work setting; no production rate pace demands;

and occasional interaction with the public and coworkers.  (*Id.*).

The ALJ concluded at Step 4 that Plaintiff was not capable of performing her past

relevant work as a laundry worker and as a team leader.  The ALJ found that Plaintiff's

past relevant work was precluded by her RFC.  (*PageID#* 78).

The ALJ next found that considering Plaintiff's age, education, work experience,

and RFC, there are jobs that exist in significant numbers in the national economy that she

can perform.  (*PageID#* 78).  This assessment, along with the ALJ's findings throughout

her sequential evaluation, led her to ultimately conclude that Plaintiff was not under a

disability and hence not eligible for  DIB or SSI.  (*PageID#* 79).

## IV.   JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ

applied the correct legal standards and whether the findings of the ALJ are supported by

substantial evidence." *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir.

2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or

disagrees with the ALJ's factual findings or by whether the administrative record contains

evidence contrary to those factual findings.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**V.     DISCUSSION**

**A.     <u>Plaintiff's Contentions</u>**

Plaintiff contends the she is more psychologically limited than the ALJ found.  She reasons that the ALJ's assessment of her mental work abilities was not supported by the

evidence of record.  (Doc. # 8 at *PageID##* 826-29).  According to Plaintiff, the evidence of record strongly contradicts the ALJ's finding that her mental health treatment was a sham to get evidence for her disability case.  (*Id.* at *PageID#* 827).  Also, according to Plaintiff, the ALJ failed to properly consider whether or not Plaintiff meets Listing § 12.05.  (*Id.* at *PageID#* 828).

Regarding her physical work abilities, Plaintiff maintains that the ALJ failed to evaluate the medical source opinions as required by the Regulations.  She contends that the ALJ's assignment of weight to the medical source opinions is the result of a failure to properly apply the legal framework for analyzing opinion evidence and is not supported by the evidence.  Plaintiff relies on Dr. Jones' opinion that Plaintiff could not perform sedentary work.  (*Id.* at *PageID#* 822-25).  Plaintiff further contends that the ALJ failed to account for Plaintiff's low back problems when determining her RFC.  (*Id.* at *PageID##* 829-31).

## C.  Analysis

### 1.
### Physical Impairments

A.    Medical Source Opinions

Plaintiff argues that the ALJ failed to properly apply the treating source rule in weighing the opinion of Plaintiff's treating physician, Dr. Jones, against the opinion of a one time agency reviewer, Dr. McCloud.

The treating physician rule, when applicable, requires the ALJ to place controlling

weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a nonexamining medical advisor or a one-time examining physician or psychologist or a medical advisor who testified before the ALJ. *Blakley*, 581 F.3d at 406 (6th Cir. 2009); *see Wilson*, 378 F.3d 541, 544 (6th Cir. 2004). A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record. *Blakley*, 581 F.3d at 406 (6th Cir. 2009); *see Wilson*, 378 F.3d at 544.

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544). More weight is generally given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(1). Yet the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the

same factors as treating physicians including supportability, consistency, and specialization.  *See* 20 C.F.R. § 404.1572(d), (f); *see also* Ruling 96-6p at *2-*3.

Plaintiff has not demonstrated that the ALJ applied incorrect standards of law when evaluating the medical source opinions.  *See* Doc. #8 at *PageID##* 822-25; Doc. #13 at *PageID##* 865-66.  She contends, however, that the ALJ's decision is not supported by substantial evidence because the ALJ's allocation of weight between the opinions of Dr. McCloud and Dr. Jones does not represent a genuine application of the legal framework relevant to medical opinion evidence.

The ALJ did not err by concluding that Dr. Jones' extreme opinion was not entitled to controlling weight because she provided no adequate explanation for any restrictions in sitting, standing, or walking.  (*PageID#* 77).  The ALJ also explained that Dr. Jones' opinion was not entitled to any significant weight because she was a family physician, not an orthopedic specialist.  (*Id.*).  This consideration of the specialization factor is consistent with the Regulations, *see* 20 C.F.R. § 404.1527(d)(5), and supported by substantial evidence.   Additionally, the ALJ gave deference to Dr. Jones' 10 pound lifting restriction because of the substantial cervical spine impairment and left shoulder problem. (*Id.*).  Although Dr. Jones commented on Plaintiff's mental abilities, the ALJ found that the emphasis of Dr. Jones' interrogatory responses had to do with Plaintiff's physical impairments.  There was nothing in this assessment, however, that dealt specifically with mental impairment per se.  (*PageID#* 74).  Substantial evidence therefore supports the ALJ's decision to discount Dr. Jones' disability opinions.

16

Next, the ALJ declined to credit Dr. Jones' opinions based on factors permitted by the Regulations. This appeared in the ALJ's finding that Dr. Jones' opinion was not supported by adequate objective findings and that her opinion was inconsistent with the records of her specialist, orthopedic surgeon, Dr. Amongero, who performed the cervical discectomy and fusion surgery in December 2007 and followed Plaintiff post-operatively. (*PageID##* 427-36).

Based on the ALJ's consideration of the record evidence as a whole, she reasonably concluded that Plaintiff was capable of performing a range of light work activities consistent with the limitations in the opinions provided by Drs. McCloud and Albert. (*PageID##* 509-16, 692).

Plaintiff also argues that the opinions of the state agency reviewers should be given less weight because these physicians never examined Plaintiff. However, as previously mentioned, the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. The Commissioner views nonexamining sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Moreover, opinions of one-time record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. § 404.1572(d), (f).

The ALJ reasonably relied on the opinions provided by Drs. McCloud and

Albert, (*PageID##* 509-16, 692), as she believed their opinions best reflected an evaluation of the record evidence as a whole and accounted for Plaintiff's credible limitations.  (*PageID#* 76).

> B.      Severe Impairments and Step 2 of the Sequential Analysis

Plaintiff also contends that the ALJ erred in finding that she did not suffer from a severe low back impairment.

Regarding Plaintiff's low back problems, the ALJ concluded the following at Step 2:

> The claimant alleged low back pain at the hearing.  In September 2006 an MRI of the lumbar spine was normal.  MRI of the thoracic spine showed "mild" multi-level degenerative disc disease.  There is no evidence of significant complaints of back pain to doctors, evaluation by specialists, or specific treatment for the low back.

(*PageID#* 73, citation to record omitted).

Plaintiff contends that based on lumbar spine x-rays from July 2004 and February 2011, the ALJ should have found her low back pain to be a severe impairment. The July 2004 x-ray, which revealed a partially sacralized segment at L6 and mild disc space narrowing at L5-S1 (*PageID#* 349) was three years prior to her alleged date of disability and when Plaintiff was still working.  The 2011 x-ray was submitted to the Appeals Council and not part of the record before the ALJ.[6]

---

[6]Where, as in Plaintiff's case, the Appeals Council had denied review of the ALJ's decision, that decision constitutes the final decision of the Commissioner subject to review.  Plaintiff's additional evidence was not, therefore, part of the record on which the Commissioner's final decision was based, and, consequently, it is not considered to be part of the administrative record for the purpose of judicial review.  *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992).

20 C.F.R. § 404.1520(c) explains that a "severe impairment" refers to an "impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." The "severe impairment" determination at Step 2 of the sequential analysis has been characterized as a "*de minimis* hurdle." *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) ("[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."); 20 C.F.R. § 404.1521(a).  Although "in the vast majority of cases a disability claim may not be dismissed without consideration of the claimant's individual vocational situation.... the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint."  *Higgs*, 880 F.2d at 862-63.

Where the ALJ determines that a claimant had a severe impairment at Step 2 of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, No. 02-2335, 73 F. App'x 801, 803 (6th Cir. Aug. 11, 2003).  Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity."  20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

19

In the instant case, the ALJ found that Plaintiff had other severe impairments.  In finding that Plaintiff had the severe impairments of cervical spondylosis with discectomy and fusion; Klippel-Feil syndrome with congenital cervical fusion; left shoulder degenerative joint disease; dysthymic disorder; anxiety; and possible borderline intellectual functioning, the ALJ considered all of Plaintiff's alleged symptoms, as well as the different diagnoses of the various medical source opinions who considered Plaintiff's symptoms.  (*PageID*## 71-73).  Then, at Step 4, the ALJ again considered the entire record, including all of the alleged symptoms and limiting effects of Plaintiff's impairments.  (*PageID*## 75-77).  The resultant RFC assessment accounted for the limiting effects of all of Plaintiff's impairments, both severe and non-severe.

Accordingly, the undersigned concludes that the ALJ's failure to find Plaintiff's lower back pain to be an additional severe impairments at Step 2 is not reversible error.

Plaintiff further argues that had the ALJ found Plaintiff's low back pain to be a severe impairment, Plaintiff would have been found limited to sedentary work, and at age fifty, in turn, found to be disabled pursuant to the Medical-Vocational Guidelines, 20 C.F.R. Subpart P, Appendix 2.  This argument lacks merit because the ALJ's assessment of Plaintiffs RFC – at the limited range of light work – was supported by substantial evidence, particularly the opinions of Dr. McCloud and Albert.  As a result, the ALJ was not required to apply Grid Rule 201.14 since it applies only to those age fifty who can only perform sedentary work. *See Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003) (claimant's characteristics must exactly match the criteria in Grid Rules to trigger a disability finding).

20

**2.**

**Mental Impairments**

A.    Mental Impairment RFC

Plaintiff next argues that her mental impairment has resulted in limitations that are more restrictive than those found by the ALJ.  Plaintiff asserts that the ALJ found that Plaintiff's mental health treatment was a sham to get evidence for her disability case. (Doc. #8 at *PageID#* 827).  Plaintiff emphasizes that the ALJ erred by failing to address the limitations of simple, repetitive tasks and the ability to withstand the stress of day-to-day work activity which Dr. Boerger found were moderately impaired in his RFC.  *See id.*

The ALJ discussed Dr. Boerger's June 2008 evaluation and the review of Dr. Boerger's report provided by Drs. Fullilove and Lewin.  (*PageID#* 72-75).  In doing so, the ALJ did not overlook Plaintiff's limitations as addressed by these medial source opinions.  In addition, the ALJ recognized at Step 2 of the sequential evaluation that Plaintiff had several severe mental impairments – dysthymic disorder; anxiety; and possible borderline intellectual functioning.  (*PageID#* 71).  The ALJ's assessment of Plaintiff's RFC recognized that certain mental-work restrictions limited Plaintiff to simple, routine, repetitive tasks with no more than occasional changes in the work setting; no production rate pace demands; and occasional interaction with the public and coworkers.  (*PageID#* 75).

In the context of the facts and circumstances of this case, it is difficult to appreciate the argument that the ALJ should have made any further accommodation than to restrict Plaintiff as noted above.

There is no apparent error in the ALJ's evaluation of the mental health medical evidence.  The medical evidence Plaintiff submitted took the form of treatment notes, forms, and similar records rather than an actual opinion from her treating psychiatrist regarding her mental condition.  (*See PageID##* 785-98).  In the absence of any treating psychiatrist opinions, the ALJ was justified in relying heavily on the consultative examination performed by Dr. Boerger and the file review performed by Drs. Fullilove and Lewin, who offered the only actual "opinions" appearing in the record.  (*PageID##* 483-89, 491-508, 691); *see Wilson*, 378 F.3d at 544; *see also Peebles v. Chater*, 85 F.3d 629 [table], 1996 WL 229528 (6th Cir. May 6, 1996) ["in the absence of any evidence from treating physicians . . . the ALJ was required to rely on the reports of the consulting physician."].

B.    Listing § 12.05

Plaintiff next argues that the decision of the Commissioner denying benefits should be reversed because the ALJ erred when she found that Plaintiff's impairments do not satisfy the criteria for mild mental retardation set forth in section 12.05(C) in Appendix I of the regulations.

Plaintiff essentially argues that she satisfies Listing § 12.05(C) because she has the requisite I.Q. score and another impairment which imposes additional and significant work-related limitations.  *See* Doc. # 8 at *PageID#* 828.

The criteria for mental retardation is contained in §12.05 of the Listings:

The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings.  Listing 12.05 contains an

introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).

If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.  Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations. For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c).  If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work.  Paragraph D contains the same functional criteria that are required under paragraph B of the other mental disorders listings.

12.05  *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. [. . .]

C.      A valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. § 404, Subpt. P, App. 1, § 12.05.

The regulations provide that a claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph and one of the four sets of criteria...." *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001) (citations omitted).

Regarding Listing § 12.05(C), the ALJ noted the following:

23

With regard to mental impairment, sections 12.04, 12.05, and 12.06 were considered. The claimant obtained scores in the mild mental retardation range on testing by Dr. Boerger, who said this was an underestimate of her true intellectual functioning based on her lifetime level of functioning. He said that he did not think she was malingering but that her emotional state was essentially depressing her cognitive functioning. The claimant reported grief issues, including the death of an uncle a few days before the exam. Treatment records from Darke County did not indicate any diagnosis of cognitive disorder and mental status exam indication was average intelligence (17 at 45). The claimant completed the 9th or 10th grade (reports varied). She testified she left school because she got married. She had a good, steady work history (see earnings record at 4D) until December 2007 when she could not continue her job as team leader for a laundry service because of her neck problems. There is nothing to show that the claimant had any deficits in adaptive functioning prior to age 22 (or since). The evidence suggests "at least" borderline intellectual functioning as noted by Dr. Boerger. Accordingly section 12.05 is not an issue.

(Doc. #7-2 at *PageID#* 73).

It is important to note that Listing § 12.05(C) has three elements: (1) the claimant experiences significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period (i.e., before the age of twenty-two); (2) the claimant has a verbal, performance, or full scale I.Q. of 60 through 70; and (3) the claimant suffers from a physical or other mental impairment imposing an additional and significant work related limitation of function. *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010), citing *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 697-98 (6th Cir. 2007).

Plaintiff must present evidence showing she meets or equals the diagnostic description in the introductory paragraph of Listing § 12.05, i.e., that she suffers from mental retardation: "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." The ALJ

24

essentially found the record is devoid of such evidence. (*PageID#* 73.) The ALJ acknowledged that the record revealed qualifying I.Q. scores in the mild mental retardation range, but noted that Dr. Boerger believed the I.Q. test results may be an underestimate of Plaintiff's "true intellectual functioning." She appears to have functioned in her life as an individual with at least borderline range level intellectual abilities based on her occupational and social history, however the ALJ also acknowledged that Dr. Boerger indicated the scores did "not appear to be the result of any malingering." (*PageID##* 72, 487-88). Importantly, the ALJ did not invalidate the I.Q. scores and simply rely on this fact to find Plaintiff not mentally retarded. Instead, the ALJ concluded Plaintiff's mental impairments did not meet or equal the diagnostic description in the introductory paragraph of Listing § 12.05. This conclusion was supported by substantial evidence.

The ALJ's finding that Plaintiff did not establish she had deficits in adaptive functioning prior to the age of 22, or since, was proper. Although Plaintiff did provide evidence of I.Q. testing from when she was in school and an academic record including poor grades, the ALJ was not provided with any other information capable of providing her with additional insight into the reason for such test results and grades. Thus, while it is possible an opposite conclusion could be reached as it relates to Plaintiff's deficits in adaptive functioning prior to the age of 22 should certain assumptions be made regarding the reason for Plaintiff's deficiencies (i.e., whether poor grades and test scores are solely related to mental limitations or other factors), the Court nonetheless does not find the ALJ's conclusion here to be unsupported by substantial evidence. *See Longworth v.*

*Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.") Regardless of whether such evidence, absent more, is sufficient to establish deficits in adaptive functioning existed prior to age 22, the ALJ did not err in also concluding Plaintiff did not show deficits in adaptive functioning after the age of 22.  Again, the ALJ's conclusion is supported by substantial evidence.  The ALJ further noted that Dr. Boerger diagnosed borderline intellectual functioning, there was no diagnosis of mental retardation in the record, and Plaintiff worked successfully as a team leader in a laundry service for many years until she could not continue in that position due to physical limitations.

It was likewise not incorrect for the ALJ to conclude Plaintiff's mental limitations did not medically equal the requirements set forth in Listing § 12.05(C).  Medical equivalence "must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1526(b).  In this regard, Plaintiff has failed to identify any medical opinion showing her impairment, if it did not meet Listing § 12.05(C), equaled Listing § 12.05(C).

Accordingly, the ALJ's determination that Plaintiff's mental impairments did not meet or medically equal Listing § 12.05 is therefore found to be supported by substantial evidence, and not improper.

## IT IS THEREFORE RECOMMENDED THAT:

1.      The Commissioner's non-disability determination be affirmed; and

2.      The case be terminated on the docket of this Court.

November 29, 2012

_____s/Sharon L. Ovington_____
Sharon L. Ovington
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).